BRENDA H. BYRD (FORMERLY OWENS) v. DAVID MARVIN OWENS

No. 8626DC1138

(Filed 21 July 1987)

1. **Divorce and Alimony § 30— equitable distribution of marital prop-
erty—parties' stipulation classifying note as marital property—no understand-
ing by parties as to effect of stipulation**

The parties' stipulation classifying a promissory note to defendant as
marital property was not valid where the legal effect of the stipulation would

be the distribution of dual nature property as if it were entirely marital property, but there was nothing in the record to show the trial court made any inquiries of the parties to ensure that they understood the legal effect of the stipulation; nor was it clear from the record that the parties had any understanding of the effect their stipulation would have on a particular debt for which apparently only defendant was legally liable.

**2. Divorce and Alimony § 30— equitable distribution of marital property—husband's debts and guarantees not properly considered**

　　In an action for equitable distribution of marital property, the trial court erred in failing to consider defendant's $250,000 debt to a bank incurred after the parties' separation and defendant's personal guarantees incurred in relation to his business ventures, since those transactions pertained to corporations with which defendant was involved both before and after the date of separation.

APPEAL by defendant from *Brown, L. Stanley, Judge.* Judgment entered 29 May 1986, in District Court, MECKLENBURG County. Heard in the Court of Appeals 11 March 1987.

*A. Marshall Basinger, II, for plaintiff-appellee.*

*Warren C. Stack for defendant-appellant.*

GREENE, Judge.

Plaintiff brought this action seeking absolute divorce from her husband and equitable distribution of their marital property. On 9 April 1984, the trial court granted the parties an absolute divorce. Both parties remarried and, on 29 May 1986, the trial court entered a judgment for equitable distribution. Defendant appeals from the judgment distributing their marital property.

Plaintiff and defendant were married in November 1957. Two children were born of the marriage, both of whom are now in their majority. In 1974, the parties moved from the State of Virginia to Iredell County, North Carolina, and purchased a home as tenants by the entirety. Shortly thereafter, defendant returned to Virginia. He continued to provide financial support and occasionally visited his wife in Iredell County. The parties separated on 8 November 1982.

Prior to the separation, defendant started a Virginia business known as D. Owens & Associates (hereinafter, "D. Owens"). The corporation distributed computer systems and terminals and, de-

fendant testified, had done "very well" through 1982 but had borrowed heavily to maintain cash flow. Some evidence tended to show defendant personally guaranteed some of the loans. At the date of separation, defendant owned 95% of D. Owens' stock. Less than two months after the separation, in December of 1982, he sold all his stock to Duke of Energy, Inc. (later to reincorporate under the name of T.U. International, Inc., and hereinafter referred to as "T.U."). He received several million shares of T.U. in exchange. Defendant testified the T.U. stock was trading publicly at that time for $5.00 a share, but his stock was restricted by federal regulations making it impossible to sell the stock publicly for two years.

After the sale of D. Owens to T.U., defendant borrowed $250,000 from Dominion National Bank (hereinafter, "Dominion") and, in the spring of 1983, purchased several million more shares of T.U. from a majority shareholder at ten cents a share. This purchase gave defendant 37% of T.U.'s stock. He testified he also received proxies for another 23% of T.U.'s stock giving him control of the corporation. Defendant testified he then became T.U.'s chief executive officer in an effort to salvage the corporation and that he personally guaranteed loans to the corporation totaling approximately $10,000,000.

About 16 months later, on 14 August 1984, defendant sold 99% of his T.U. stock to First Tarent Corporation. In exchange, First Tarent gave defendant an unsecured promissory note for $1,154,420. The principal on the note was due in five years, and the note required semi-annual interest payments at 13% per annum. It also contained a provision whereby First Tarent could cancel the note by returning the stock to defendant. Defendant testified he had not received any payment from First Tarent and had brought suit against the corporation for the collection of the note. The corporation counterclaimed for fraud in the transaction. At the time of the distribution hearing, that suit had not been resolved. Defendant also testified that T.U. (now a subsidiary of First Tarent) had filed bankruptcy on 5 September 1985.

Prior to the equitable distribution hearing, the parties stipulated that the First Tarent note, issued nearly two years after their separation, was marital property. They did not

stipulate to its value, neither did they present direct evidence of the fair market value of D. Owens at the date of separation. Plaintiff did, however, present evidence that the several million T.U. shares defendant had received in exchange for D. Owens had a value of $13,125,000 even though the stock was restricted. The court made an apparent unequal division of the marital property, giving defendant 80% interest in the promissory note from First Tarent and a $10,000 promissory note issued to defendant by Terminals Unlimited, Inc., a subsidiary of T.U. The rest of the parties' marital property, including the marital home valued at $70,000, was distributed to plaintiff. In its order, the court declared the value of the First Tarent note to be whatever was collected on the note without regard to the cost of recovery expended by defendant.

The issues before us are: 1) whether the parties' stipulation classifying the First Tarent note as marital property was valid and 2) whether the trial court erred in failing to consider defendant's debt to Dominion and his personal guarantees of corporate loans.

I

[1] In applying our equitable distribution statute, the trial court must follow a three-step procedure: 1) classification, 2) evaluation and 3) distribution. *Cable v. Cable*, 76 N.C. App. 134, 137, 331 S.E. 2d 765, 767, *disc. rev. denied*, 315 N.C. 182, 337 S.E. 2d 856 (1985). Thus, when parties to an equitable distribution action make a valid stipulation that certain property is to be classified as marital property, the trial court is nonetheless required to value and distribute that property.

The trial court in this case did not value the note but simply distributed it by giving an 80% interest to defendant and 20% to plaintiff. N.C.G.S. Sec. 50-21(b) (Supp. 1985) requires all marital property to be valued as of the date of separation if the parties' absolute divorce is based on one year's separation. If the parties' stipulation as to the classification of the First Tarent note was valid, the note should have been valued as of the date of separation. The note was issued 14 August 1984, nearly two years after the separation date, making the valuation of the note itself on that date impossible. However, based on the appellate record, there was evidence which could have been used to give the note a

value as of the date of separation by using the traditional methods of tracing funds already applied by our courts in equitable distribution cases. *Nix v. Nix*, 80 N.C. App. 110, 341 S.E. 2d 116 (1986); *Mauser v. Mauser*, 75 N.C. App. 115, 118-19, 330 S.E. 2d 63, 65 (1985); *Wade v. Wade*, 72 N.C. App. 372, 381-82, 325 S.E. 2d 260, 269, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985) (adopting the "source of funds" approach to classification under N.C.G.S. Sec. 50-20). It can be determined from the record that the corporation D. Owens and the money borrowed from Dominion, though not then owned by either party, were the assets in existence at the date of separation which were eventually converted into the First Tarent note. Even though neither valuation would be simple, each asset must be valued. *See Poore v. Poore*, 75 N.C. App. 414, 331 S.E. 2d 266, *disc. rev. denied*, 314 N.C. 543, 335 S.E. 2d 316 (1985) (regarding the valuation of a business). However, the court would be required to proceed with the valuation and distribution of the First Tarent note as marital property only if the parties' stipulation to the note's classification was valid.

Parties to an equitable distribution action must understand and freely agree to the legal effects of their stipulations, and the record must affirmatively reflect that they understand and agree. *McIntosh v. McIntosh*, 74 N.C. App. 554, 328 S.E. 2d 600 (1985). The court must make contemporaneous inquiries of the parties at the time the stipulations are entered and it should read to them the terms of the stipulations. *Id.* at 556, 328 S.E. 2d at 602.

In the case before us, there is nothing in the record to show the trial court made any inquiries of the parties to ensure they understood the legal effect of the stipulation. The parties' stipulation as to the classification of the First Tarent note would have an important effect on the total value of their marital property. It is apparent to us from the evidence in the record that, without the stipulation, the First Tarent note would be classified as dual nature property: property that is part separate and part marital. *Willis v. Willis*, 85 N.C. App. 708, 710, 355 S.E. 2d 828, 830 (1987); *Nix v. Nix*, 80 N.C. App. 110, 113, 341 S.E. 2d 116, 120 (1986). Thus, the legal effect of the parties' stipulation would be the distribution of dual nature property as if it were entirely marital property. It is not clear that the parties understood this.

Neither is it clear from the record that the parties had any understanding of the effect their stipulation would have on the Dominion debt, upon which apparently only defendant was legally liable. Defendant testified he used the money he borrowed from Dominion to buy part of the T.U. stock exchanged for the First Tarent note. We note for clarity that the record before us reveals the debt was incurred between the date of separation and the date the parties were divorced. It is not clear from the record whether the parties understood that the Dominion debt would be classified as a marital debt because of their stipulation.

Since the record does not affirmatively reflect that the parties understood the legal effect their stipulation as to the classification of the First Tarent note would have, this case must be remanded for a new trial.

## II

[2] Defendant raises an issue on appeal which may reoccur at trial, and, for that reason, we choose to address it here. Defendant contends the trial court did not consider every liability of the parties as required by N.C.G.S. Sec. 50-20(c)(1) in making an unequal distribution. He says the court considered neither his debt of $250,000 to Dominion incurred after the date of the parties' separation nor his personal guarantees incurred in relation to his business ventures.

N.C.G.S. Sec. 50-20(c) states:

> There shall be an equal division by using net value of marital property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:
>
> (1) The income, property, and liabilities of each party at the time the division of property is to become effective;
> . . .

Since the assets and obligations of a husband and wife are reciprocally related, there can be no complete and equitable distribution of their property without also considering and distributing their debt. "Distribution of marital debts has the benefit of resolving all issues flowing from the former marriage

relationship." *Geer v. Geer*, 84 N.C. App. 471, 475, 353 S.E. 2d 427, 430 (1987). Debt, as well as assets, must be classified as marital or separate property. If the debt is classified as marital, the court must value the debt and distribute it pursuant to N.C.G.S. Sec. 50-20(c). For the purpose of an equitable distribution, marital debt is debt incurred during the marriage for the joint benefit of the husband and wife. *Geer*, 84 N.C. App. at 475, 353 S.E. 2d at 429. The burden of proof is on the party seeking to classify the debt as marital. If the debt is classified as separate, the court must value it and then, pursuant to N.C.G.S. Sec. 50-20(c)(1) consider it in making a distribution.

In the case before us, the court made no mention of the debt to Dominion or defendant's personal guarantees in its findings of fact. While the debt to Dominion was incurred by defendant after the parties' separation, it was used to purchase the First Tarent note. Evidence in the record tends to show defendant had personally guaranteed loans to the corporations he was involved with both before and after the date of separation. The court should have classified and valued the debt to Dominion and proceeded to either distribute it as marital debt or consider it as separate debt in making the distribution. Because the court did not classify this debt, its conclusions of law determining the distribution of the marital property are not supported by the findings of fact.

As to defendant's personal guarantees, even though the valuation of the contingent liability is difficult, the trial court must also classify and value them if the defendant presents sufficient evidence as to their value. A trial court

> should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied. On appeal, if it appears that the trial court reasonably approximated the net value . . . based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed.

*Poore v. Poore*, 75 N.C. App. 414, 422, 331 S.E. 2d 266, 272, *disc. rev. denied*, 314 N.C. 543, 335 S.E. 2d 316 (1985).

### III

New trial.

Judges ARNOLD and MARTIN concur.