REBECCA E. SIPPE, PLAINTIFF v. J. LAWRENCE SIPPE, DEFENDANT

No. 8926DC1404

(Filed 18 December 1990)

**Pensions § 1 (NCI3d)— qualified domestic relations order—initial determination by plan administrator**

The Retirement Equity Act requires that an employee pension plan administrator make the initial determination as to whether a domestic relations order issued by the district court meets the requirements of a "qualified domestic relations

order" so as to permit garnishment of an employee's benefits to enforce an alimony obligation.

**Am Jur 2d, Pensions and Retirement Funds §§ 464-467.**

APPEAL by defendant from orders entered 17 October 1989 in MECKLENBURG County District Court by *Judge Robert P. Johnston.* Heard in the Court of Appeals 24 August 1990.

*Horack, Talley, Pharr & Lowndes, by Tate K. Sterrett, for plaintiff-appellee.*

*Bailey, Patterson, Caddell & Bailey, P.A., by G. Russell Kornegay, and Moore and Van Allen, by C. Wells Hall, III, for defendant-appellant.*

DUNCAN, Judge.

On June 3, 1987, the plaintiff, Rebecca Sippe (plaintiff), filed a complaint seeking temporary and permanent alimony, child custody and support, and attorneys' fees. On July 23, 1987, the defendant, J. Lawrence Sippe (defendant), filed an answer which included a counterclaim for divorce from bed and board. At the time suit was filed, defendant resided in Charlotte, North Carolina and was employed at the Nalle Clinic there. Judgment in plaintiff's action was subsequently entered directing defendant to pay plaintiff alimony in the amount of $2,700 per month until the death of either party, plaintiff's remarriage, or further order of the court. By the time of entry of judgment, defendant had moved to Arizona and was practicing medicine in that state.

Defendant has failed to pay the amount of alimony required by the judgment every month since its entry, and eventually ceased making payments altogether. As a result, on July 14, 1989, plaintiff filed a motion to enforce judgment and secure payment of alimony, and on September 18 filed an amendment to that motion seeking the entry of a Qualified Domestic Relations Order (QDRO) assigning to her the right to receive payments from the defendant's retirement plan with the Nalle Clinic, known as the Nalle Clinic Company Pension Plan and Trust.

Following a hearing on the matter, on October 17, 1989, the trial court entered the following three orders:

1. A contempt order finding that defendant's failure to pay alimony as required was wilful and unjustified, and that he was therefore in contempt of court;

2. An order concluding that plaintiff was entitled to the entry of a QDRO assigning to her the right to receive funds under the defendant's retirement plan with the Nalle Clinic; and

3. A QDRO assigning to plaintiff the right to receive from defendant's account the sum of $11,500 for amounts past due, and the right to receive the sum of $2,700 per month from the account for a period of 360 months until the death of the plaintiff or defendant, the plaintiff's remarriage, or the exhaustion of funds in the account.

From these orders, defendant appeals.

I

The sole issue raised by this appeal is whether the domestic relations order entered below is in fact a qualified domestic relations order (QDRO) within the meaning of the Retirement Equity Act. The district court found, and the defendant does not dispute, that he is a participant in the plan, and is fully vested in all funds in his account under the plan. Rather, defendant argues that the QDRO entered is fatally flawed in that it fails to meet the specific requirements set forth in the Internal Revenue Code of 1986 (hereinafter "the Code") for five reasons:

1. it attempts to enjoin the defendant from receiving benefits to which he is entitled under the plan;

2. it fails to specify the amount or percentage of the participant's benefit to be paid to the alternate payee;

3. it fails to specify the number of payments or the period to which the order applies;

4. it requires the plan to provide a type or form of benefit not otherwise provided under the plan; and

5. it contains an injunction prohibited by the plan because it does not permit required minimum distributions to be made to the defendant.

We find, however, nothing in the record to indicate that the plan administrator has made a determination of whether the order

in question is a QDRO. Because the Retirement Equity Act specifically requires such a determination we remand for further proceedings consistent with this opinion.

## II

Congress enacted the Employee Retirement Income Security Act of 1974 (ERISA) to establish a comprehensive federal scheme for the protection of pension plan participants and their beneficiaries. *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 120 (1979). Its "most important purpose" was to "assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." *Smith v. Mirman*, 749 F.2d 181, 182 (quoting from S. Rep. No. 93-127, 93d Cong., 2d Sess. (1974), reprinted in U.S. Code Cong. & Admin. News, pp. 4639, 4849 (1974)). To serve this purpose by insuring that an employee's accrued benefits would be available upon retirement, ERISA includes an anti-assignment provision, requiring each plan to provide that benefits thereunder may not be assigned or alienated. 29 U.S.C. § 1056(d)(1) (1990). The Internal Revenue Code contained similar provisions. I.R.C. § 401(a)(9), (13) (1990). In order to qualify for favorable tax treatment, a plan must prohibit any assignment or alienation of benefits. *See Mirman*, 749 F.2d at 182.

Further, ERISA specifically provides that it supersedes any state laws relating to employee benefits plans. 29 U.S.C. § 1144(a) (1985). Thus, ERISA has effectively preempted this area of law.

Because of the preemption and anti-assignment provisions the question initially arose as to whether ERISA prevented state courts from entering domestic relations orders garnishing retirement plans to enforce alimony or child support obligations. *See, e.g., Tenneco, Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688 (4th Cir. 1983). A majority of the courts which addressed the issue concluded that ERISA in fact did not prevent such assignments. *See Operating Engineers, Etc. v. Zamborsky*, 650 F.2d 196, 198 (9th Cir. 1981). However, Congress resolved any uncertainty in 1984 by enacting the Retirement Equity Act, which amended ERISA to create an exception to its anti-assignment provisions for a state domestic relations order that meets the requirements of a "qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). In order to constitute a QDRO, the order must meet the technical requirements set out

SIPPE v. SIPPE

[101 N.C. App. 194 (1990)]

in 29 U.S.C. § 1056(d)(3)(B)-(D). These requirements are the ones on which the parties here focus. However, there is another requirement that concerns us preliminarily.

29 U.S.C. Section 1056(d)(3)(G)(i) provides that in the case of any domestic relations order received by a plan,

> (i) the plan administrator shall promptly notify the participant and any other alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders, and

> (ii) within a reasonable period after receipt of such order, the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.

The statute goes on to provide that a plan must establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distribution under such qualified orders. Further, 29 U.S.C. § 1056(d)(3)(H)(i) provides,

> During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (*by the plan administrator, by a court of competent jurisdiction, or otherwise*) the plan administrator shall segregate in a separate account in the plan or in an escrow account the amounts which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order. (emphasis added).

The statute certainly appears to contemplate that the plan administrator make the initial determination whether the domestic relations order issued by the district court is a QDRO within the terms set out in the plan itself. Although we find no cases directly on point, either in North Carolina or elsewhere, two of the three cases from other jurisdictions cited by the appellee came to their respective Supreme Courts for review from a determination by the plan administrator that the order in question was not a QDRO.

In *Taylor v. Taylor*, 44 Ohio St. 3d 61, 541 N.E.2d 55 (1989), the trial court rendered its decision in favor of the wife and issued a withholding order to the husband's employer, Columbia Gas Co., the employer which issued the plan in question. Counsel for Columbia Gas responded indicating that it could not comply with the

court's order because, in its opinion, the order in question was not a QDRO. Similarly, in *Stinner v. Stinner*, 520 Pa. 374, 554 A.2d 45 (1989), Mrs. Stinner filed two writs of execution on appellee Bethlehem Steel Corporation to garnish Mr. Stinner's pension, which Bethlehem Steel established under the provisions of ERISA. Bethlehem Steel refused to comply with the garnishment on the ground that, in its opinion, the writ of execution served on the plan administrator did not constitute a QDRO under the Retirement Equity Act.

It thus appears that the Retirement Equity Act itself and the few cases that have interpreted it require the pension plan itself to make the initial determination of whether a domestic relations order issued by the district court is a QDRO under the terms of the plan. Since there is no indication in the record that that has been done here, we remand with instructions to the trial court to issue the appropriate order to the Nalle Clinic Company Pension Plan and Trust for its determination of validity.

For the foregoing reasons the orders of the trial judge are

Reversed and remanded.

Judges ORR and COZORT concur.