DEBORAH ANN FOX, Plaintiff v. JAMES RUSSELL FOX, Defendant

No. 9226DC340

(Filed 5 April 1994)

1. **Divorce and Separation § 132 (NCI4th)— equitable distribution —business assets—post-separation appreciation**

    The trial court erred in an equitable distribution action in distributing property consisting of shares in Accent Mobile Homes personally owned by defendant and shares owned through a profit sharing plan where the trial court's judgment properly recited that post-separation appreciation is a distributional factor; plaintiff was awarded one-half of the appreciation through an "adjustive credit" applied in calculating plaintiff's share of the marital property; and, despite the conclusion that an equal division would be equitable, plaintiff received approximately 66% of the marital estate. Post-separation appreciation is not marital property and cannot be distributed by the court, but is a distributional factor which the court must consider; however, under *Gum v. Gum*, 107 N.C. App. 734, the court may not simply divide and distribute the amount of post-separation increase. On remand, a conclusion that an equal division of marital property would not be equitable would be within the discretion of the court and is the appropriate means to take into consideration the increase in value of marital assets after the date of separation.

    **Am Jur 2d, Divorce and Separation §§ 901, 902.**

2. **Trial § 140 (NCI4th)— equitable distribution—valuation of property—stipulations—binding**

    Stipulations in an equitable distribution action that the parties would be bound by the valuations of assets by a particular CPA were binding where there was a written pretrial equitable distribution order which recited the agreement but

FOX v. FOX

[114 N.C. App. 125 (1994)]

which was not signed or otherwise acknowledged by the parties, and there was a second set of stipulations on the day of trial at which time the court examined the parties concerning the terms of the agreement. While the first agreement standing alone cannot be binding, the stipulations became binding at trial when all appropriate inquiries were made and the parties acknowledged their assent and understanding.

**Am Jur 2d, Stipulations §§ 8, 9.**

3. **Trial § 140 (NCI4th)— equitable distribution—valuation of property—stipulations**

Defendant could not argue in an equitable distribution action that a CPA's valuation of assets was based upon incompetent evidence where defendant's stipulation at trial, made with full knowledge of the facts, removed the pertinent valuations, including their evidentiary bases, from the field of evidence. Because the action was remanded on other grounds and the trial court will be obliged to find new date-of-trial values, the stipulations regarding the use of this particular CPA to calculate post-separation matters are without effect; the parties had agreed to exact valuations given by the CPA and known to the parties at the time the stipulations became effective. However, the date the parties separated remains constant and the date-of-separation values remain the same.

**Am Jur 2d, Stipulations §§ 8, 9.**

4. **Divorce and Separation § 147 (NCI4th)— equitable distribution —debt—personal guaranty**

The trial court did not err in an equitable distribution action which was remanded on other grounds by finding that the only marital debt was the mortgage on the former marital home and that defendant had no debts or liabilities other than those owing plaintiff and the minor child where defendant contended that the court failed to take into consideration defendant's personal guaranty of certain business debts incurred prior to the separation. There is no mention of the alleged debt in the record save defendant's testimony and the trial judge as the sole arbiter of credibility may reject the testimony of any witness in whole or in part. Upon remand, the parties will be entitled to present evidence of their current financial condition, but defendant is not entitled to present further

FOX v. FOX

[114 N.C. App. 125 (1994)]

evidence regarding the classification of any personal guaranty as marital debt.

**Am Jur 2d, Divorce and Separation §§ 870 et seq., 937 et seq.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

5. **Divorce and Separation § 144 (NCI4th)— equitable distribution evidence of distribution factors—evidence on remand**

When evidence of a particular distributional factor is introduced, the trial court must consider the fact and make an appropriate finding of fact. Furthermore, on remand, it would serve no purpose to admit additional evidence of factors static in nature; however, the trial court should allow new evidence as to any factor if the existence, non-existence, or quantum thereof is likely to have changed by the time of the new hearing.

**Am Jur 2d, Divorce and Separation §§ 870 et seq., 937 et seq.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

6. **Appeal and Error § 341 (NCI4th)— equitable distribution— valuation of marital home—assignment of error**

Defendant in an equitable distribution action abandoned any argument that the valuation of the marital home was improper where defendant alluded to an error in the valuation of the marital home in his assignment of error, made an oblique reference to the valuation in his argument, and did not assign error to the court's finding concerning the sale price of the home and the parties' stipulation as to its value.

**Am Jur 2d, Appeal and Error §§ 648 et seq.**

**Divorce: equitable distribution doctrine. 41 ALR4TH 481.**

7. **Divorce and Separation § 535 (NCI4th)— equitable distribution —costs—findings**

There is no authority for the assertion that the trial court in an equitable distribution action must specifically describe each amount when awarding costs.

**Am Jur 2d, Divorce and Separation §§ 870 et seq.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

FOX v. FOX

[114 N.C. App. 125 (1994)]

Appeal by defendant from judgment entered 31 October 1991 by Judge L. Stanley Brown in Mecklenburg County District Court. Heard in the Court of Appeals 9 March 1993.

*Robinson, Bradshaw & Hinson, P.A., by Martin L. Brackett, Jr. and John B. Garver, III, for plaintiff-appellee.*

*Hicks, Hodge and Cranford, P.A., by Edward P. Hausle, for defendant-appellant.*

JOHN, Judge.

In this equitable distribution action, defendant husband brings forward eleven arguments relating to: (1) valuation and classification of particular assets; (2) award of a "distributive credit" to plaintiff; (3) division of assets; (4) assessment of costs; and (5) designation of the court's 31 October 1991 order as a Qualified Domestic Relations Order.

The parties were married 31 May 1975 and separated 27 August 1989. On 20 August 1990, plaintiff wife filed the present action requesting, *inter alia,* equitable distribution. The parties divorced 3 December 1990. On 31 October 1991, the trial court entered the equitable distribution judgment and the Qualified Domestic Relations Order which are the subjects of the present appeal. Other facts necessary to an understanding of the issues will be presented within the text of this opinion.

I. *The Accent Assets*

Defendant's primary contention is that the trial court erred in its treatment of the parties' interest in the stock and profit-sharing plan of Accent Mobile Homes, Inc. (Accent). We agree.

The parties' interest in Accent was derived through a complicated series of business transactions. During most of the marriage, defendant was employed by A-1 Mobile Homes (A-1) and participated in its profit sharing plan (the A-1 Plan). Upon defendant's leaving A-1 in late 1988, his total vested plan balance was $478,481.55. In January 1989, he withdrew $29,308.30 from the A-1 Plan in order to create and capitalize Accent Mobile Homes, Inc. (Accent); thereafter he established Accent's Profit-Sharing Plan and Trust (the Accent Plan). As the result of several transactions, the A-1 Plan assets were "rolled" into the Accent Plan. As trustee

FOX v. FOX

[114 N.C. App. 125 (1994)]

of this new plan, defendant periodically directed it to purchase Accent stock, providing the growing company with needed capital.

As of the *date of separation*, Accent had issued 175,000 shares of stock, 25,000 personally owned by defendant and the remainder by the Accent plan. *After separation*, defendant "rolled" all remaining A-1 funds into the Accent Plan which used these "new" funds to acquire additional Accent stock. Accordingly, *by the time of trial*, the Accent Plan owned 380,738 shares of Accent stock.

The parties entered into a series of stipulations regarding the aforementioned assets, including agreeing to be bound by the pertinent valuations of T. Randy Whitt, CPA. Utilizing Whitt's report, the trial court derived the following *date-of-separation* values:

1. $329,499.06 — Liquid assets in both profit sharing plans.

2. $ 27,350.00 — Defendant's Accent stock.

3. $164,150.00 — Accent stock owned by Accent plan.

$520,999.06 — Total

The court found the following to be the *date-of-trial* values:

1. $ 53,000.00 — Liquid assets in Accent plan.

2. $ 41,714.00 — Defendant's Accent Stock.

3. $635,286.00 — Accent stock owned by Accent plan

$730,000.00 — Total

Initially, we note the *questions* preceding defendant's arguments in his brief often address only *the Accent stock* and do not mention the *Accent plan*. While not specifically required, the better practice under our Appellate Rules is for each question clearly and concisely to address the matters argued thereunder, *i.e.*, the argument in the brief should correspond to the question presented, so as to avoid needless confusion. *See* N.C.R. App. P. 28(b); *cf. State v. Purdie*, 93 N.C. App. 269, 278, 377 S.E.2d 789, 794 (1989) (the argument in the brief should correspond to the assignment of error). Nonetheless, regardless of any shortcomings in his brief, we elect to examine the merits of defendant's arguments. *See* N.C.R. App. P. 2.

## A. *Classification*

**[1]**   Defendant maintains the post-separation appreciation of the Accent assets was, in essence, treated by the trial court as marital property and that one-half was awarded to plaintiff. We believe this contention has merit.

Post-separation appreciation of a marital asset is not marital property and therefore cannot be distributed by the trial court. *Gum v. Gum*, 107 N.C. App. 734, 737-38, 421 S.E.2d 788, 790 (1992). Instead, such appreciation is a distributional factor which the court must consider in resolving what division of the marital property would be equitable. N.C.G.S. § 50-20(c)(11a) or (c)(12) (1987); *Chandler v. Chandler*, 108 N.C. App. 66, 68-69, 422 S.E.2d 587, 589 (1992); *Gum v. Gum*, 107 N.C. App. at 737-38, 421 S.E.2d at 790; *Truesdale v. Truesdale*, 89 N.C. App. 445, 448-49, 366 S.E.2d 512, 514-15 (1988). As stated by this Court in *Gum*:

> *Rather than distributing the sums representing the [post-separation] appreciation*, the trial court must consider the existence of this appreciation, determine to whose benefit the increase in value will accrue, and then consider that benefit when determining whether an equal or unequal distribution of the marital estate would be equitable.

*Gum*, 107 N.C. App. at 738, 421 S.E.2d at 790. (emphasis added). Thus if the trial court, after considering the post-separation appreciation (and any other statutory factors supported by the evidence), determines that an equal division of the marital assets would not be equitable, it may order an unequal distribution. *Smith v. Smith*, 111 N.C. App. 460, 505, 433 S.E.2d 196, 223, *disc. review denied*, 335 N.C. 177, 438 S.E.2d 202 (1993). However, under *Gum*, it may not simply divide and distribute the amount of post-separation increase.

In the case *sub judice*, the trial court's judgment properly recites that post-separation appreciation of the Accent assets is a "distributional factor." Nonetheless, plaintiff was awarded one-half of this appreciation through what the trial court termed an "adjustive credit" which was thereafter applied in calculating plaintiff's share of the marital property. Such an award is contrary to the holding in *Gum* quoted above, and is in disregard of our warning in *Truesdale* rejecting the "notion . . . that it is harmless error to distribute such appreciation so long as it is

distributed in the same ratio deemed equitable under Section 50-20(c) . . . ." *Truesdale*, 89 N.C. App. at 449, 366 S.E.2d at 515. Further, no stipulation authorized the trial court to act in this manner. *See Byrd v. Owens*, 86 N.C. App. 418, 421-22, 358 S.E.2d 102, 105 (1987).

Moreover, it is apparent the court's error affected the final judgment. The total marital estate was valued at $638,250.59, and the trial court concluded that "[a]n equal division of the marital property is equitable." Nevertheless, after application of the "adjustive credit," plaintiff received $423,625.76 (approximately 66% of the marital estate). Such an award, in the face of the court's conclusion that an equal division would be equitable, constituted an abuse of discretion. *See Smith*, 111 N.C. App. at 470-71, 505, 433 S.E.2d at 203, 223. Accordingly, we must vacate that portion of the judgment concerning what constitutes an equitable division of the marital estate as well as the final distribution of the marital property; we remand this cause to the trial court for redetermination of an equitable distribution of the parties' marital property and for entry of a new judgment. *Id.* at 505, 433 S.E.2d at 223.

As in *Smith*, we recognize that after properly considering the post-separation appreciation of the Accent assets as a distributional factor, the trial court may conclude that an equal division of the marital property would not be equitable. *See Smith*, 111 N.C. App. at 505-506, 433 S.E.2d at 223. "That would certainly be permissible and within the discretion of the trial court and is the appropriate means by which to take into consideration the increase in value of marital assets occurring after the date of separation." *Id.*

### B. *Valuation*

[2]  Despite the parties' previously noted stipulations (whereby they purportedly agreed to be bound by the pertinent valuations of T. Randy Whitt, CPA), defendant nonetheless insists there are two reasons the values placed upon the Accent assets are erroneous. *First*, he maintains the parties stipulated only to date-of-separation values and not to date-of-trial values. *Second*, he contends the date-of-separation values were based upon incompetent evidence.

Both arguments concern the effect given to the parties' stipulations. Stipulations are judicial admissions which, unless limited as to time or application, continue in full force *for the duration of the controversy. In re Annexation Ordinance*, 296 N.C. 1, 14, 249

S.E.2d 698, 706 (1978). Our Courts acknowledge stipulations may save substantial time and cost, but will not extend the operation thereof beyond the limits set by the parties. *Rickert v. Rickert*, 282 N.C. 373, 380, 193 S.E.2d 79, 83 (1972). Therefore, in determining the scope of a stipulation, we must examine the circumstances existing at the time of the agreement and adopt a reasonable construction with a view towards effecting the intent of the parties. *Id.*

In equitable distribution actions, our courts favor *written stipulations* which are duly executed and acknowledged by the parties. *See McIntosh v. McIntosh*, 74 N.C. App. 554, 556, 328 S.E.2d 600, 602 (1985). *Oral stipulations*, however, are binding if the record affirmatively demonstrates: (1) the trial court read the stipulation terms to the parties, and (2) the parties understood the effects of their agreement. *Id.; Eubanks v. Eubanks*, 109 N.C. App. 127, 130, 425 S.E.2d 742, 744 (1993).

In the case *sub judice*, there exist two purported sets of "stipulations." The first is contained in a written pre-trial equitable distribution order entered 13 February 1991 which recites that the parties agreed to be bound by the CPA's valuation of the Accent assets. Standing alone, this alleged agreement cannot be binding as it was neither signed nor otherwise acknowledged by the parties. *See Eubanks*, 109 N.C. App. at 130, 425 S.E.2d at 744.

The second set of stipulations occurred on the day of trial at which time the court examined the parties concerning the terms of agreement stated in the earlier pre-trial order. The record reflects that all appropriate inquiries were made and that the parties acknowledged their assent and understanding. At this point, therefore, the stipulations became binding upon both plaintiff and defendant. Moreover, our examination of the transcript reveals the court examined the parties concerning their consent to *both* date-of-separation and date-of-trial values placed upon the Accent assets by the CPA. Hence, defendant's initial assertion that the agreement did not encompass date-of-trial valuations is unavailing.

[3] Defendant's second valuation argument addresses the date-of-separation values of the Accent assets. Defendant acknowledges he agreed to be bound by the CPA's valuations concerning these matters. Nevertheless, he contends the findings and conclusions regarding these values must be vacated because the CPA's calculations were based upon incompetent evidence. However, assuming

*arguendo* the CPA relied upon incompetent evidence, defendant's argument is without merit.

The record affirmatively discloses that defendant stipulated to the date-of-separation valuation of the Accent assets. A stipulation is not itself evidence, rather it "removes the admitted fact from the field of evidence by formally conceding its existence." 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 198, at 23 (4th ed. 1993). Since defendant had access to the CPA's report prior to the time his stipulations became binding, he cannot now complain of any irregularities in that report. His stipulation at trial, made with full knowledge of the facts, removed the pertinent valuations (including their evidentiary bases) "from the field of evidence."

We observe that remand will have no effect on the date-of-separation valuations. Because the date the parties separated remains constant, the date of separation values also remain the same. Defendant's opportunity to contest the CPA's date-of-separation valuations was waived by his stipulation to those values. In essence, defendant has already had his proverbial "bite at the apple." Allowing him a second opportunity to contest the CPA's valuations would serve only to protract litigation and clog the trial court with issues which should have been resolved at the original hearing. *Cf. Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990).

Conversely, because we are remanding, the trial court will be obliged to find new date-of-trial values. Furthermore, upon remand the stipulations regarding the use of this particular CPA to calculate post-separation matters are without effect. At the time the stipulations became effective (the day of trial), the parties knew the exact valuations given by the CPA. Accordingly, the parties agreed to only those values—not to any new valuations which will be required on remand. *See McIntosh*, 74 N.C. App. at 556, 328 S.E.2d at 602 (The parties should fully understand the terms of their agreement.).

## II. *Debts*

[4] Regarding the parties' debts, the trial court found the only marital debt to be the mortgage on the former marital home, and further determined defendant had no debts or liabilities other than those owing plaintiff and the minor child. According to defendant, these findings of fact are unsupported by the evidence because

the trial court failed to take into consideration defendant's personal guaranty of certain Accent business debts which were incurred prior to the date of separation.

Debts, as well as assets, must be classified as marital or separate property. *Byrd v. Owens*, 86 N.C. App. 418, 424, 358 S.E.2d 102, 106 (1987). If marital, the debt must be valued and distributed just as a marital asset. A marital debt is defined as one:

> incurred during the marriage and before the date of separation by either spouse or both spouses for the joint benefit of the parties . . . . Additionally, any debt incurred by one or both of the spouses after the date of separation to pay off a marital debt existing on the date of separation is properly classified as a marital debt.

*Huguelet v. Huguelet*, 113 N.C. App. 533, 536, 439 S.E.2d 208, 210 (1994) (citations omitted). The party seeking to classify a debt as marital has the burden of proof. *Byrd*, 86 N.C. App. at 424, 358 S.E.2d at 106. Separate debt, meanwhile, cannot be distributed. Instead the trial court must value separate debt and consider it as a factor under N.C.G.S. § 50-20(c)(1) (1987) when dividing the marital property. *Id.*

A personal guaranty may well pose significant valuation problems due to the contingent nature of the "debt." Nevertheless, the trial court must also classify and value a personal guaranty if the parties *present sufficient evidence as to the debt's existence and value. Byrd*, 86 N.C. App. at 424, 358 S.E.2d at 106; *cf. Albritton v. Albritton*, 109 N.C. App. 36, 40-41, 426 S.E.2d 80, 83-84 (1993) (trial court did not have to make a finding as to the husband's pension plan where no evidence was presented regarding the value of the plan).

In the case *sub judice,* there was no error because defendant failed to meet his evidentiary burden. We have reviewed the affidavits and other evidence of record and find no mention of this alleged debt save for defendant's testimony. He asserted the guaranty was (1) incurred prior to separation and (2) originally in the name of both of the parties, but was unsure as to the exact value of this contingent liability although he proffered an opinion it would be "in excess of $250,000." The trial judge is the sole arbiter of credibility and may reject the testimony of any witness in whole or in part. *See General Specialties Co. v. Teer Co.*, 41 N.C. App.

273, 275, 254 S.E.2d 658, 660 (1979). Furthermore, defendant's testimony on this matter was presented with reference to Plaintiff's Exhibit no. 3 which, from our review, was not included in the record on appeal. This Court cannot examine questions concerning documents which are not contained in the record on appeal. *See Loeb v. Loeb*, 72 N.C. App. 205, 218, 324 S.E.2d 33, 42, *disc. review denied*, 313 N.C. 508, 329 S.E.2d 393 (1985). Accordingly, the trial court did not err in failing to consider in its judgment the guaranty debt asserted by defendant.

Upon remand, the parties are entitled to present evidence of their post-separation (current) financial situation, including any debts which they possess. If sufficient evidence is presented as to the existence and valuation of any separate debt, then the trial court should consider such debt as a factor in deciding what constitutes an equitable division of the marital property. N.C.G.S. § 50-20(c)(1) (1987). However, on remand defendant is *not* entitled to present further evidence as regards classifying any personal guaranty as marital debt. Similar to the circumstance concerning his stipulation to date of separation values, defendant had ample opportunity previously to present such evidence and meet his burden of proof, yet failed to do so. *See Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990).

### III. *Remaining distributional factors*

[5] Defendant's third and fifth arguments both pertain to alleged deficiencies in the judgment regarding certain distributional factors listed in G.S. § 50-20(c). Because we are remanding for a new hearing due to the erroneous treatment of post-separation appreciation, we deem it unnecessary to examine the alleged inadequacies regarding other factors. On remand, after proper consideration of any post-separation appreciation and in light of the passage of time, the trial court may likely accord different weight to these distributional factors. *See Smith v. Smith*, 111 N.C. App. 460, 500, 433 S.E.2d 196, 220 (1993) (the weight to be given a particular factor is committed to the sound discretion of the trial court). We take this occasion to reiterate, however, that when evidence of a particular distributional factor is introduced, the court must consider the factor and make an appropriate finding of fact with regard to it. *Freeman v. Freeman*, 107 N.C. App. 644, 656, 421 S.E.2d 623, 629 (1992).

We further observe that on remand, the trial court is not required to admit new evidence as to all distributional factors. It would serve no purpose to admit additional evidence of factors static in nature, *i.e.*, those which are established at the date of separation or which otherwise remain unchanged at the time of a new equitable distribution hearing. The opportunity to present evidence as to any static distributional factors has passed. The trial court, however, should allow new evidence as to any factor if the existence, non-existence, or quantum thereof is likely to have changed by the time of the new hearing. *Cf. Smith*, 111 N.C. App. at 517, 433 S.E.2d at 230 (On remand, the trial court was directed to consider new evidence only "as the court finds necessary to correct the errors identified herein.").

[6]   In reference to defendant's argument no. 3, we also note that he makes an oblique reference to the valuation of the marital home, asserting that "[t]he only evidence concerning the value of the marital home was the price for which it sold one year after . . . separation." Although his assignment of error no. 29 arguably alludes to an error in the valuation of the marital home, defendant makes no contention within argument no. 3 that this valuation was improper. Furthermore, in its findings of fact, the trial court determined the marital home sold for $31,471.11 and that "the parties have stipulated that to be the date of separation net fair market value of this asset." No error was assigned to this finding of fact. Under these circumstances, defendant has abandoned any argument that the valuation of the marital home was improper. *See Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991) (appellate review is limited to issues presented by an assignment of error in the record on appeal); *Wachovia Bank & Trust Co. v. Southeast Airmotive*, 91 N.C. App. 417, 419, 371 S.E.2d 768, 769 (1988) (appellant waives an assignment of error which is not discussed in his brief), *disc. review denied*, 323 N.C. 706, 377 S.E.2d 230 (1989).

## IV. *Costs*

[7]   Defendant next contends the trial court erred by assessing the costs of this action against him, insisting the court's order was deficient in failing specifically to describe each individual cost. This argument is devoid of merit.

The right to tax costs did not exist at common law; therefore they are awarded only pursuant to statutory authority. *Brandenburg Land Co. v. Champion Intern. Corp.*, 107 N.C. App. 102, 103,

FOX v. FOX

[114 N.C. App. 125 (1994)]

418 S.E.2d 526, 528 (1992). N.C.G.S. § 6-20 (1986), the primary statute providing for allowance of costs, invests the trial court with broad discretion to assess costs and we may reverse its order only upon an abuse of that discretion. *See Wade v. Wade*, 72 N.C. App. 372, 384, 325 S.E.2d 260, 271, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985).

It is generally recognized that expert witness' fees are not "costs" unless the expert has been subpoenaed. *Brandenburg*, 107 N.C. App. at 104, 418 S.E.2d at 528. In the case *sub judice*, there is no dispute as to expert witness fees because the parties agreed to an equal division of these fees. As regards the remaining costs of this action, defendant cites no authority and we find none for his assertion that the trial court's order must specifically describe each amount. Furthermore, at the present juncture it is inappropriate for us to examine whether the trial court's assessment of costs amounted to an abuse of discretion. On remand, after proper consideration of all relevant distributional factors and the passage of time, the trial court may consider a different cost assessment appropriate. The award of trial costs in any forthcoming judgment, however, should take into account the costs of both the hearing from which it results as well as the previous proceeding. As to appellate costs, we direct that each party bear the cost of their own brief and remaining costs be assessed against the parties in equal amounts. *See* N.C.R. App. P. 35(a).

## V. *QDRO*

Defendant next argues the trial court erred by entering the Qualified Domestic Relations Order (QDRO) which accompanied the judgment of equitable distribution. According to defendant, the purported QDRO is, in fact, not a QDRO because, *inter alia*, the plan administrator (of a plan in which defendant is trustee and sole participant) has determined the order not to be a QDRO. Defendant relies on *Sippe v. Sippe*, 101 N.C. App. 194, 398 S.E.2d 895 (1990), *disc. review denied*, 329 N.C. 271, 407 S.E.2d 840 (1991), as support for his contention. In *Sippe*, we held the plan administrator must make the *initial determination* whether a domestic relations order is a QDRO. *Sippe*, 101 N.C. App. at 198-99, 398 S.E.2d at 898. However, because our decision vacates, in part, the equitable distribution judgment upon which this order is based, we must also vacate the court's order denominated a QDRO. It is therefore unnecessary to examine defendant's allegations in this regard further.

*Disposition*

In summary, we hold erroneous only the treatment of post-separation appreciation and thus vacate both the QDRO and that portion of the judgment addressing what constitutes an equitable distribution of the marital assets and the consequent award thereof. On remand, the trial court should enter a new judgment consistent with this opinion, relying upon the existing record (since a full-blown trial is unnecessary) and receiving additional evidence and entertaining argument only as necessary to correct the errors identified herein. *See Smith*, 111 N.C. App. at 517, 433 S.E.2d at 230.

Affirmed in part, vacated in part, and remanded.

Judges JOHNSON and LEWIS concur.