# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

**December 3, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **PATSY LOREAN JOHNSON,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Shelby Chancery No. D-13441-3 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JAMES LARRY JOHNSON,** | ) | Appeal No. 02A01-9703-CH-00069 |
| | ) | |
| Defendant/Appellant. | ) | |

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

For the Plaintiff/Appellee:

Charlie R. Ashford
Memphis, Tennessee

For the Defendant/Appellant:

Lawrence W. White
Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

DAVID R. FARMER, J.

HEWITT P. TOMLIN, JR., SR.J.

# OPINION

This is a divorce case. In the original divorce, years ago, the wife was awarded shares of stock from the husband's pension fund. Subsequently, the pension fund was distributed to the husband, with no monies going to the wife. In this action, the trial court awarded the wife a judgment for the value of the stock at the time of the trial court's order. The husband appeals. We affirm.

Patsy Lorean Johnson ("Wife") filed for divorce from James Larry Johnson ("Husband") in Shelby County, Tennessee, on October 8, 1985. During the litigation, Husband threatened that he would quit his job and collect his pension before he would pay Wife alimony or agree to a division of the marital assets. The trial court then entered an injunction prohibiting Husband's employer from distributing to Husband "any savings, pension or profit sharing funds, or other retirement funds, pending further orders of this Court." This injunction was never modified or lifted.

The final decree of divorce was entered on December 19, 1986. The decree awarded Wife:

the exclusive ownership of a one half (½) interest in any and all pension funds, profit sharing accounts, savings or stock accounts held in the name of or for the use and benefit of the defendant, James Larry Johnson, by his employer, Buckeye Cellulose Company, any of its agents, fiduciaries or depositories and said interest shall be vested and determined as of December 15, 1986.

Nothing was done at that time to transfer Wife's interest to her. Husband continued to work for Buckeye Cellulose after the divorce.

In May 1996, Wife filed a petition to require Husband to disclose his pension and profit sharing funds. After a hearing, the trial court found that, in 1993, the pension funds had been distributed to Husband with no funds going to Wife. The trial court's findings may be summarized as follows:

1. In the parties' divorce decree dated December 19, 1986, Wife was awarded one-half of Husband's pension, savings and profit sharing accounts with his employer, Buckeye Cellulose Company.
2. Husband's employer, however, never transferred the funds into Wife's name.
3. The entire pension fund was distributed to Husband on or about March 16, 1993.
4. Husband did not deliver to Wife her share of the funds.
5. At the time of the divorce, Wife was entitled to 533.802 shares of Proctor and Gamble common stock and cash amounting to $2,557.87.
6. The shares have split two for one on October 20, 1989 and again on May 15, 1992.
7. At the time of distribution in 1993, Wife was entitled to 2,135.208 shares of Proctor & Gamble stock, and share value as of September 17, 1996 was $93.00 per share.
8. Plaintiff is entitled to receive the sum of $198,574.34 for her shares, plus the cash award of $2,557.87, for a total award of $201,132.21.

The trial court also found Husband in contempt, and ordered him incarcerated until he purged

himself of the contempt by payment of the judgment. Husband was later released from custody and filed this appeal.

We review the trial court's findings *de novo*, with a presumption of correctness of the trial court's findings of fact. *See* Tenn. R. App. P. 13(d). "Trial courts are entitled to broad discretion in adjudicating the rights of parties in a divorce case. Decisions based upon this discretion are entitled to great weight." *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. App. 1995) (citations omitted). No transcript or statement of the evidence was filed in this case, so our review is confined to the technical record.

Husband argues that the trial court erred in ordering him incarcerated for civil contempt until he paid Wife the sum of $201,132.21, an amount representing the present value of the pension account. Husband contends that the trial court should have instead awarded Wife $49,000, which represents the value of Wife's fifty-percent interest in the pension fund in 1986, when the divorce decree was entered. On appeal, Husband does not challenge his incarceration, only the amount of the money judgment rendered against him.

At the time of the divorce, under the trial court's orders, Wife was entitled to 533.802 shares of Proctor and Gamble common stock. The shares split two for one on October 20, 1989 and again on May 15, 1992 to result in a total of 2,135.208 shares. Share value as of September 17, 1996 was $93.00 per share, for a total cash value of $198,574.34.

Husband claims that the trial court should not have included in its valuation stock splits that occurred twice during the ten years since the divorce decree, alleging that this valuation is "arbitrary and without a factual basis." The divorce decree states that Wife's interest "shall be vested and determined as of December 19, 1986." Therefore, Husband claims that the trial court should not have used present day dollars to determine the value of Wife's percentage. Husband alleges that the divorce decree could not have granted the trial court jurisdiction to divide property acquired in the future.

In dividing marital assets, one of two methods may be employed to value and distribute pension benefits. In the first method, the trial court determines the present cash value of the pension at the time of the dissolution of the marriage. The trial court then determines the value of the percentage owed to the non-employee spouse and "awards the other spouse marital property of equal value." *Kendrick v. Kendrick*, 902 S.W.2d 918, 927 (Tenn. App. 1994). The second method, called

the "retained jurisdiction" method, "requires the court to retain jurisdiction over the case and to defer dividing the pension interest until the pension vests or matures." *Id.*; *see Cohen v. Cohen*, 937 S.W.2d 823 (Tenn.

1996). Under this method, the trial court retains jurisdiction to oversee the payment of benefits. ***See Cohen***, 937 S.W.2d at 831.

In this case, the trial court's 1986 permanent injunction stated that "no funds shall be distributed to [Husband] from any savings, pension or profit sharing funds, or other retirement funds, pending further orders of this Court." In the 1986 final decree of divorce, the trial court awarded Wife:

> the exclusive ownership of a one half (½) interest in any and all pension funds, profit sharing accounts, savings or stock accounts held in the name of or for the use and benefit of the defendant, James Larry Johnson, by his employer, Buckeye Cellulose Company, any of its agents, fiduciaries or depositories and said interest shall be vested and determined as of December 15, 1986. And said interest shall be paid to her at the earliest date allowable; that any of defendants [sic] interest in and to said one-half (½) of said fund is devested out of defendant and vested in plaintiff and any interest of the plaintiff in the balance is divested out of her and vested in the defendant.

The final decree of divorce did not mention the earlier permanent injunction and made no further provision to distribute Wife's interest in the pension funds to her.

Therefore, the trial court's final decree of divorce does not state expressly whether the pension funds were valued by the present cash value method or the retained jurisdiction method. Husband argues that, in the judgment that is the subject of this appeal, the trial court erred in the valuation of the pension because Wife's interest should have been limited to a portion of the benefits that Husband earned during the marriage, and any accrual beyond that amount belonged to him. However, in the 1986 decree, the trial court simply awarded Wife a fixed percentage of the shares of stock in the pension fund, and left in place the permanent injunction prohibiting the distribution of the pension fund to Husband. Therefore, it is clear that the trial court in its 1986 decree did not value the pension fund under the "present value" method, because no shares of stock or equivalent monies were distributed to Wife. Implicitly, by fixing Wife's share of the pension fund and leaving in place the injunction against its distribution, the trial court retained jurisdiction over the pension fund to be distributed at a later date.

Husband argues that, by awarding Wife a judgment that gives her the benefit of stock splits and increases in value after the final decree of divorce, the trial court erroneously awarded Wife a division of property out of Husband's future earnings or property acquired in the future. In support of his contention, Husband cites ***Ettinger v. Ettinger***, 637 P.2d 63 (Okla. 1981). In ***Ettinger***, the wife claimed a one-half interest in stock *options* that her former husband would receive from his

4

employer some time in the future. The *Ettinger* court found that it was "without authority to make a division of property out of . . . 'future acquired property.'" *Id.* at 65. It stated that "[s]tock options not in existence at the time of the entering of the divorce decree, and over which [Husband] had no interest whatsoever, is simply not property acquired by [Wife] and [Husband] during coverture and therefore is not subject to being divided by the court." *Id.*

Therefore, in *Ettinger*, the wife sought division of stock options not yet earned by the husband at the time of the divorce decree. In contrast, in this case, Wife received in the 1986 divorce decree shares of stock that were in existence at the time of the divorce. These shares increased in number and in value as the result of economic factors outside the parties' control. The increase in value of Wife's share in the pension was not contingent upon any action by Husband, such as his continued employment with that company.

The facts in this case are analogous to those in *Bigbie v. Bigbie*, 898 P.2d 1271 (Okla. 1995). In *Bigbie*, the husband, an insurance agent, claimed that the trial court erred in considering future commissions on renewals of insurance policies as marital assets and not as "future acquired property." *Bigbie*, 898 P.2d at 1272. The appellate court found that the anticipated renewal commissions were properly designated as marital property because "the husband was entitled to receive the income under a contractual agreement with the insurance company which also provided for the husband's heirs to receive the renewal commissions in the event of his death and allowed the husband to assign the commissions under certain circumstances." *Id.* at 1273 (citing *Niroo v. Niroo*, 545 A.2d 35 (Md. 1988)). As in *Bigbie*, in this case, Husband was entitled to receive the pension under a contractual arrangement with his employer established at the time of the divorce decree. *See also Pascale v. Pascale*, 660 A.2d 485, 498 (N.J. 1995) ("[S]tock options awarded after the marriage has terminated but obtained as a result of efforts expended during the marriage should be subject to equitable distribution.").

It must be noted that post-marriage appreciation of a marital asset is not marital property. *See Fox v. Fox*, 441 S.E.2d 613, 616 (N.C. App. 1994). However, after the 1986 decree of divorce, Wife's share of the pension fund was no longer marital property; rather, it was Wife's separate property. Husband seeks to retain the benefit of the stock splits and their increase in value, but after the 1986 decree, those shares of stock no longer belonged to him.

Husband also asserts that Wife should be barred from pursuing her claim by the doctrine of

laches. Husband contends that by failing to bring this action for over seven years, Wife lost her rights to the funds. Husband points to no place in the record before this Court in which this issue was raised before the trial court. It is well-settled that "[i]ssues not raised or complained of in the trial court will not be considered on appeal." *Tops Bar-B-Que, Inc. v. Stringer*, 582 S.W.2d 756, 758 (Tenn. App. 1977); *see Carl Clear Coal Corp. v. Huddleston*, 850 S.W.2d 140, 143-44 (Tenn. App. 1992). Therefore, the argument will not be considered on appeal.

Finally, Husband contends that the trial court erred in determining that he was in willful contempt of a permanent injunction when the final decree of divorce did not mention the continuation of the injunction. As noted above, we have no transcript or statement of evidence on the proceedings below. The trial court's findings do not address Husband's alleged violation of a permanent injunction. The technical record does not reflect the basis for the finding of contempt. The trial court's order entered on September 20, 1996, states only that Husband:

> knew of [Wife's] interest in the pension, profit sharing and savings funds distributed to him on March 16, 1993; that he has failed to produce records of transactions or to account to [Wife] or the Court for the funds received and the Court finds [Husband] in willful Civil Contempt of the prior Orders of the Court and that he should be incarcerated until he has purged himself of said Civil Contempt.

Without an appellate record setting forth the factual basis for the trial court's ruling, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. App. 1992). Therefore, we must find this issue to be without merit.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**DAVID R. FARMER, J.**

_____
**HEWITT P. TOMLIN, JR., SR.J.**