STEVIE IKECHUKWU, Plaintiff,
v.
FLORENCE IKECHUKWU, Defendant.
No. COA09-46
Court of Appeals of North Carolina.
Filed November 3, 2009
This case not for publication
Alyscia G. Ellis, for Plaintiff.
Florence Ikechukwu, pro se, for Defendant.
ERVIN, Judge.
Stevie Ikechukwu (Plaintiff) appeals from an equitable distribution judgment entered 5 August 2008 that, among other things, assigned no value to the Bekee Food Store, a convenience store acquired by Plaintiff and Florence Ikechukwu (Defendant) during their marriage; awarded both parties a one-half undivided interest in the Bekee Food Store and the real property on which the store was located; assigned Plaintiff "[a]ll outstanding indebtedness of the Bekee Food Store business;" and determined that an unequal distribution of marital assets that favored Defendant and awarded Defendant all of the equity in the marital home was appropriate. We affirm in part and reverse and remand in part.
On 17 May 1998, Plaintiff and Defendant were married in Vance County, North Carolina. Plaintiff and Defendant allegedly separated in 2003. On 11 February 2004, Plaintiff filed a complaint seeking, among other relief, equitable distribution of the parties' marital property. On 31 May 2004, Plaintiff filed an amended complaint in which he alleged (1) that Defendant was legally married to another man in 1974; (2) that Defendant had not sought or obtained a "divorce, annulment or legal termination" of this marriage prior to marrying Plaintiff; and (3) that the marriage between Plaintiff and Defendant was "bigamous" and void ab initio. As a result, Plaintiff requested that the court annul the "marriage between the parties and equitably distribute the parties' marital property and debts," among other things.
On 21 May 2004, the court entered an Emergency Order finding that Plaintiff and Defendant had not separated. The court also "restrained, enjoined and [forbade]" both parties from "selling, conveying, alienating, wasting, secreting, or converting to his [or her] own use or the use of any other, any or all of the marital property . . . until further order of this Court."
On 26 May 2004, Defendant filed an Answer, Counterclaims and Motions dated 20 May 2004 in which she denied the material allegations of Plaintiff's amended complaint, including the allegation that the parties had separated, and asserted a counterclaim for equitable distribution; asked the court to restrain Plaintiff from "disposing of or wasting marital property, converting marital property to his own use, and/or secreting marital property;" and sought other relief. On 29 June 2004, Plaintiff filed an Answer to Defendant's 26 May 2004 filing in which he denied the material allegations of Defendant's filing.
Although Plaintiff and Defendant had "resumed the[] marital relationship," they separated again in January 2005. On 5 December 2005, the court entered an order denying Plaintiff's request for an annulment. On 23 October 2006, the court entered a judgment granting the parties an absolute divorce.
On 6 August 2008, the trial court entered an order equitably distributing the parties' marital property. In that order, the trial court found that Plaintiff and Defendant acquired the following assets during their marriage which are relevant to the issues that Defendant seeks to raise on appeal: (1) the Bekee Food Store; (2) a tract of real property on which the Bekee Food Store is located; and (3) equity in the marital home.
The trial court "assign[ed] no value to the Bekee Food Store due to a failure of proof on the part of both parties." The trial court attributed its inability to value the Bekee Food Store "to [P]laintiff's management of the multiple bank accounts held and/or managed exclusively by him in the name of the food store and other names including the [P]laintiff personally, the [P]laintiff jointly with others, Blessed Auto and Moshe Holdings Inc." According to the trial court, "[t]he parties . . . stipulated the distributional value of the food store real property to be the tax value of $39,433.00."
The trial court found that the marital home was "sold at foreclosure after the date of the parties' separation and before the date of trial" and that the parties "stipulated [that the] fair market value" of the marital home was $240,000.00. The parties purchased the marital home for $217,445.00 on 25 November 2002. The principal balance owed to the mortgage lender on the date of purchase was $170,400.00. At the time of foreclosure, the principal balance owed on the mortgage loan was $165,807.34. According to Plaintiff, there were two additional mortgage debts against the marital home in favor of third parties totaling $50,000.00. However, the trial court concluded that Plaintiff's contentions regarding these additional debts "lack[ed] credibility" and that the equity in the marital home totaled $51,638.00.
The trial court awarded one-half interests in the real property on which the Bekee Food Store was located and in the Bekee Food Store itself to Plaintiff and Defendant; assigned all outstanding indebtedness associated with the Bekee Food Store to Plaintiff; and awarded the equity in the marital home to Defendant. From this judgment, Plaintiff appeals to this Court.

Standard of Review
The standard of review employed in reviewing equitable distribution orders is well-established. "[W]ritten findings of fact [must] be made in any order for the equitable distribution of marital property made pursuant to N.C.[Gen. Stat.] § 50-20[,]" regardless of whether the resulting property distribution is equal or unequal. Armstrong v. Armstrong, 322 N.C. 396, 403, 368 S.E.2d 595, 599 (1988). "Findings of fact by the trial court are upheld on appeal as long as they are supported by competent evidence." Gum v. Gum, 107 N.C. App. 734, 738, 421 S.E.2d 788, 791 (1992) (citation omitted). A failure to make findings of fact sufficient to allow proper appellate review necessitates a remand for the making of additional findings. See Gowing v. Gowing, 111 N.C. App. 613, 620, 432 S.E.2d 911, 913 (1993). The trial court's conclusions of law are, on the other hand, reviewed de novo. See Renner v. Hawk, 125 N.C. App. 483, 491, 481 S.E.2d 370, 375 (1997).
A relaxed standard of review must be used in examining the trial court's actual distribution decision, which is discretionary in nature:
Historically our trial courts have been granted wide discretionary powers concerning domestic law cases. The legislature also clearly intended to vest trial courts with discretion in distributing marital property under N.C. [Gen. Stat. §] 50-20, but guided always by the public policy expressed therein favoring an equal division. . . . It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason.
White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (citations omitted). At the distribution phase of an equitable distribution proceeding in which an unequal distribution is requested, the trial court must make specific findings of fact regarding each factor specified in N.C. Gen. Stat. § 50-20(c) on which the parties offered evidence. Embler v. Embler, 159 N.C. App. 186, 189, 582 S.E.2d 628, 630 (2003).

Analysis

I: Valuation and Distribution of the Bekee Food Store
In his initial challenge to the trial court's judgment, Plaintiff contends that the trial court erred by distributing a one-half undivided interest in Bekee Food Store to each party without first valuing the business as required by N.C. Gen. Stat. § 50-21(b). We agree with Plaintiff's contention in part and disagree in part.
According to N.C. Gen. Stat. § 50-20(a), "the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties[.]" In order to achieve this result, the trial court must conduct a three-stage analysis: (1) the court must identify, through the use of appropriate findings of fact, the assets that should be classified as marital property; (2) the court must determine the net value of these as of the date of separation; and (3), to the extent that the court concludes that an unequal distribution of marital property is appropriate, the court must make "sufficient findings upon which an unequal distribution of marital property must be based" given the statutory presumption in favor of an equal distribution. Little v. Little, 74 N.C. App. 12, 16-20, 327 S.E.2d 283, 287-89 (1985).
Plaintiff's challenge to the trial court's treatment of the Bekee Food Store implicates the second component of this required analysis, which involves "determin[ing] the net (market) value of the marital property as of the date of separation." Little, 74 N.C. App. at 20, 327 S.E.2d at 288 (citing N.C. Gen. Stat. §§ 50-20(c) and 50-21(b)). In order to properly determine the net fair market value of a particular marital asset, the trial court must first ascertain its fair market value and then reduce that amount by the value of any associated debt. Carlson v. Carlson, 127 N.C. App. 87, 91, 487 S.E.2d 784, 786, disc. review denied, 347 N.C. 396, 494 S.E.2d 407 (1997). "When there is conflicting testimony as to value, the trial court may not merely guess at a figure somewhere in between, but may arrive at such a middle figure after considering the factors involved in the various appraisals." Nix v. Nix, 80 N.C. App. 110, 115, 341 S.E.2d 116, 120 (1986). Even if the court has made findings identifying a specific item as marital property, a failure to find that item's value renders the court's findings insufficient to support a proper distribution decision. See Soares v. Soares, 86 N.C. App. 369, 371-72, 357 S.E.2d 418, 419 (1986) (holding that, "[a]lthough the court . . . made some findings and conclusions" regarding the marital home, "it did not place a value on the marital home[,]" and therefore, "the order . . . must be vacated and the cause remanded for further proceedings").
"[T]he party claiming an interest in the [marital property], [has] the burden of proof as to the value of the [marital property] on the date of the parties' separation." Albritton v. Albritton, 109 N.C. App. 36, 40, 426 S.E.2d 80, 84 (1993) (citing Atkins v. Atkins, 102 N.C. App. 199, 401 S.E.2d 784 (1991)). "This same burden of proof applies [to both] . . . marital debts [and] marital assets." Albritton, 109 N.C. App. at 40-41, 426 S.E.2d at 84. The trial court, as the finder of fact in an equitable distribution proceeding, Kiser v. Kiser, 325 N.C. 502, 511, 385 S.E.2d 487, 492 (1989), has "the right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it," Brown v. Brown, 264 N.C. 485, 488, 141 S.E.2d 875, 877 (1965); see also Fox v. Fox, 114 N.C. App. 125, 134, 441 S.E.2d 613, 619 (1994) (stating that the trial court is "sole arbiter of credibility and may reject the testimony of any witness in whole or in part"). When valuing business interests determined to be marital property, the trial court may consider the following factors in making its decision: "gross sales, cost of goods sold, profit, operating expenses, and income and retained earnings[.]" Phillips v. Phillips, 73 N.C. App. 68, 75, 326 S.E.2d 57, 61 (1985); see also Poore v. Poore, 75 N.C. App. 414, 419, 331 S.E.2d 266, 271, disc. review denied, 314 N.C. 543, 335 S.E.2d 316 (1985) (stating that, when valuing a professional practice, a court may consider "(a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities").
Although valuation of marital property may occasionally be a difficult undertaking, this Court has stated that, "[e]ven [if] valuation would [not] be simple, each asset must be valued." Byrd v. Owens, 86 N.C. App. 418, 421-22, 358 S.E.2d 102, 105 (1987) (holding that, even though a "note was issued . . . nearly two years after the separation date, making the valuation of the note itself on that date [nearly] impossible[,]" the court erred by failing to value the note prior to distribution since "there was evidence which could have been used to give the note a value as of the date of separation by using the traditional methods of tracing funds") (citing Poore, 75 N.C. App. at 414, 331 S.E.2d at 266). However, the obligation to value marital property before distribution "exists only when there is credible evidence supporting the value of the asset." Grasty v. Grasty, 125 N.C. App. 736, 739, 482 S.E.2d 752, 754, disc. review denied, 346 N.C. 278, 487 S.E.2d 545 (1997) (citing Albritton, 109 N.C. App. at 40-41, 426 S.E.2d at 83-84 (holding that the trial court did not err in failing to determine a value for a pension in the absence of evidence as to the pension's value); Owens, 86 N.C. App. at 424, 358 S.E.2d at 106 (1987) (holding that personal guarantees must be valued "if the defendant presents sufficient evidence as to their value"); Miller v. Miller, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990) (stating that the requirement that the court value property "exists only when evidence is presented to the trial court which supports the claimed . . . valuation"). If there is no credible evidence of value, such unvalued property is not subject to equitable distribution.[1]See Grasty, 125 N.C. App. at 740, 482 S.E.2d at 755 (holding that, "[b]ecause only those assets and debts that are classified as marital property and valued are subject to distribution under the Equitable Distribution Act (Act), and because the trial court (on this record) properly refused to assign a value to Grasty Service," "[t]he trial court . . . erred in distributing Grasty Service in this equitable distribution proceeding").
The trial court made the following findings of fact relevant to the issues surrounding the distribution of the Bekee Food Store:
6.(1). The Court assigns no value to the Bekee Food Store due to a failure of proof on the part of both parties. However, as will be found and discussed in greater detail hereinbelow . . ., the lack of sufficient evidence to support a finding of the actual value of this asset must necessarily be attributed to plaintiff's management of the multiple bank accounts held and/or managed exclusively by him in the name of the food store and other names including the plaintiff personally, the plaintiff jointly with others, Blessed Auto and Moshe Holdings Inc. [Footnote 2] "The evidence is replete with examples of plaintiff's use of multiple accounts for intertwined business and personal purposes including, but not limited to: the purchase of inventory for the food store; the `brokerage' or import/export business he has engaged in during the marriage and after the separation of the parties; paying housing, transportation and living expenses for himself, defendant and their child . . .; paying for his parents' housing; loans to third parties; donations to organizations; travel expenses for himself and Moshe; car payments; cash; miscellaneous unjustified personal uses and numerous other purposes. The Court is convinced that no reasonable accounting could have been accomplished within the means available to either party given the state of the food store accounts and other accounts available in the evidence at trial. [End Footnote 2]
. . . .
8. The plaintiff alleges that he had extensive credit card indebtedness to Sam's Club (approximately $16,000.00), Discover Bank ($9,112.40), Sears ($709.09), Bank of New York Mastercard ($1,583.03) and an RBC Centura line of credit line [sic] in the amount of $2,748.89, at the date of separation accrued in connection with his operation of the food store and other marital businesses. The Court has noted hereinabove that plaintiffs' management of his accounts renders a valuation of the food store impossible. Similarly, it is not possible for the Court to determine what specific purchases attributed to the alleged marital debt for the food store were in fact made specifically for the food store. The plaintiff testified on cross-examination that he used his Sam's Club membership to purchase personal items and items for Bekee Food Store until he was unable to keep up with his payments and, thereafter, his purchases were paid for by credit card and line of credit borrowing. The Court cannot speculate as to the ratio of personal business expense to legitimate business expense for [the] Bekee Food Store or other businesses. Nor can the Court determine what amount of the debt claimed by plaintiff as marital actually benefitted the marriage as opposed to solely benefitting the plaintiff. What is clear to the Court, however, is that, after the 2003 separation of the parties, plaintiff retained sole and exclusive control over every asset of the parties, all spending for the businesses and supported himself wholly from the food store and other marital businesses.
. . . .
12.(C)(1) The Bekee Food Store real property is a non-liquid asset which the Court could order sold for the purpose of effecting a division. However, to do so would destroy the future profitability of the business itself. The date of separation and present value of the Bekee Food Store business cannot, as the Court has found hereinabove, be reasonably determined, but certainly it will have no future value apart from whatever inventory presently exists if the store is sold and, given the judgment of this Court, the sale of the real property is not required to equitably divide the marital estate. Given the relative equities of the parties as found herein, the other distributional factors found, a distribution of the Bekee Food Store real property business and real property to the defendant is equitable.
. . . .
12.(D)(1) The Court has found that plaintiff began shifting monies to a variety of accounts and businesses after the parties separated in 2003 and continued to engage in this practice after they resumed their marital relationship right up to and after the date of separation. This practice has led to the dearth of clear evidence of the actual value of the marital estate confronting the Court at the time of trial. The Court has found and does find, therefore, relevant to this factor, the following:
(a) The plaintiff has had the benefit of all income and profit from the marital businesses since the date of separation and the defendant has had none;
(b) The plaintiff has had total control over all marital debt of the parties since the date of separation and, to the extent that marital debt still exists as of the time that the Court must distribute the same, that debt still exists as the sole and proximate result of the fact that the plaintiff has chosen to support himself and others wholly from the income from marital businesses[.]
. . . .
12.(E)(1) The Court finds that the "loans" claimed by plaintiff to constitute valid liens against the marital home of the parties to constitute fraudulent claims on the part of the plaintiff for the reasons set forth hereinabove[.]
. . . .
12.(E)(3) Plaintiff has made several trips to destinations abroad since the date of separation, including to Nigeria. It is apparent to the Court that he is actively engaged in a "brokerage" and/or import/export business, although he denies substantial earnings from this business. He alleges that the food store is not profitable. Where then do the funds which appear flowing into and out of his many accounts come from? The Court believes and, thus, finds that plaintiff is able to earn substantial income from his these other businesses.
Based on these findings of fact and after concluding that "[a]n unequal distribution of the marital estate in favor of the defendant is equitable," the trial court ordered that:
1. Plaintiff is hereby awarded the following marital assets and debts:
(a) A one-half undivided interest in the Bekee Food Store real property located at 1302 Fay Street, Lot C, Durham, North Carolina;
(b) A one-half undivided interest in the Bekee Food Store business equipment, inventory and all other assets of the same, including the business name[.]
. . .
2. Defendant is hereby awarded the following marital assets:
(a) A one-half undivided interest in the Bekee Food Store real property located at 1302 Fay Street, Lot C, Durham, North Carolina;
(b) A one-half undivided interest in the Bekee Food Store business equipment, inventory and all other assets of the same, including the business name[.]
After careful consideration, we conclude that the trial court's decision to distribute the Bekee Food Store in its equitable distribution judgment violates the principles enunciated in Grasty. In Grasty, 125 N.C. App. at 739, 482 S.E.2d at 754, the "defendant offered evidence as to the value of Grasty Service and the trial court found it to be `wholly incredible and without reasonable basis.'" As a result, the court held that, "[b]ecause the defendant failed to present credible evidence as to the value of Grasty Service, the trial court did not err in failing to value that asset." Id. In like manner, the evidence in this case did not permit the trial court to distinguish between Plaintiff's personal assets, debts and expenditures and those of Bekee Food Store, so that it could not determine the store's "gross sales, cost of goods sold, profit, operating expenses, and income and retained earnings." Phillips, 73 N.C. App. at 75, 326 S.E.2d at 61. The trial court made numerous findings in support of its conclusion that the record did not permit a credible valuation of Bekee Food Store, including findings that (1) "[t]he Court assigns no value to the Bekee Food Store due to a failure of proof on the part of both parties"; (2) "the lack of sufficient evidence to support a finding of the actual value of this asset must necessarily be attributed to plaintiff's management of the multiple bank accounts"; (3) "[t]he evidence is replete with examples of plaintiff[']s use of multiple accounts for intertwined business and personal purposes"; (4) "[t]he Court is convinced that no reasonable accounting could have been accomplished within the means available to either party given the state of the food store accounts and other accounts available in the evidence at trial"; (5) "plaintiff[']s management of his accounts renders a valuation of the food store impossible"; (6) "it is not possible for the Court to determine what specific purchases attributed to the alleged marital debt for the food store were in fact made specifically for the food store"; (7) "[t]he Court cannot speculate as to the ratio of personal business expense to legitimate business expense for Bekee Food Store or other businesses"; (8) "[t]he date of separation and present value of the Bekee Food Store business cannot, as the Court has found hereinabove, be reasonably determined"; and (9) "plaintiff began shifting monies to a variety of accounts and businesses," a "practice [that] has led to the dearth of clear evidence of the actual value of the marital estate confronting the Court at the time of trial." Thus, the trial court properly concluded that Plaintiff failed to present "credible evidence supporting the value of the asset" as required by Grasty, 125 N.C. App. 736, 482 S.E.2d 752. For that reason, the trial court did not err in declining to value the Bekee Food Store. See Id. However, the trial court's inability to value that asset meant that it was not subject to equitable distribution. See Id. Despite that fact, the trial court assigned half of the Bekee Food Store to each party in its equitable distribution judgment. As a result, the trial court erred by distributing the Bekee Food Store. Accordingly, while we affirm the trial court's decision to refrain from assigning a value to the Bekee Food Store, we reverse the trial court's decision to distribute the Bekee Food Store between the parties and remand this case to the trial court for the entry of a new equitable distribution order, without the opportunity for the presentation of new evidence, Miller, 97 N.C. App. at 80, 387 S.E.2d at 183 (stating that "we will not remand the case for the taking of new evidence" since "[t]he parties have had ample opportunity to present evidence" and since "taking of new evidence. . . would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing"), that distributes the parties' assets, other than the Bekee Food Store, in an equitable manner in accordance with the relevant statutory provisions.

II: Valuation and Distribution of the Bekee Food Store Debt
In Plaintiff's second argument on appeal, he contends that the trial court erred by assigning all of the debt associated with the Bekee Food Store to Plaintiff while assigning him only a one-half undivided interest in that business. More specifically, Plaintiff argues that the trial court erred by refusing to consider a $40,000.00 civil penalty assessed against the Bekee Food Store by the United States Department of Agriculture (USDA) and credit card debts incurred, in part, in order to purchase inventory for the Bekee Food Store in its distribution decision. After careful consideration, we agree with Plaintiff's contention in part and disagree with his contention in part.
A marital debt is a debt "incurred during the marriage for the joint benefit of the parties during the marriage." Geer v. Geer, 84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987). The trial court has the authority, in an equitable distribution proceeding, to assign responsibility for specific debts among the parties regardless of which spouse actually incurred the obligation and regardless of which spouse is liable to a third party creditor for that indebtedness. See Atkins, 102 N.C. App. at 208, 401 S.E.2d at 789 (stating that "[t]he fact that the debt is in the name of one or both of the spouses is not determinative of the proper classification"). The trial court does not, however, have any authority over debts incurred after the date of separation unless the debt inures to the benefit of the marital estate. See Edwards v. Edwards, 110 N.C. App. 1, 428 S.E.2d 834, disc. review denied, 335 N.C. 172, S.E.2d 374 (1993). On the other hand, "[s]eparate debt . . . cannot be distributed[;] [i]nstead the trial court must value separate debt and consider it as a factor under N.C. [Gen. Stat.] § 50-20(c)(1) . . . when dividing the marital property." Fox, 114 N.C. App. at 134, 441 S.E.2d at 619.
"If marital, the debt must be valued and distributed just as a marital asset." Fox, 114 N.C. App. at 134, 441 S.E.2d at 619; see also Pott v. Pott, 126 N.C. App. 285, 288, 484 S.E.2d 822, 825 (1997) (stating that "[i]n equitable distribution actions the trial court is required to classify, value and distribute, if marital, the debts of the parties to the marriage" (quotation omitted)); Dalgewicz v. Dalgewicz, 167 N.C. App. 412, 423, 606 S.E.2d 164, 172 (2004) (stating that, "to enter a proper equitable distribution judgment, the trial court must specifically and particularly classify and value all . . . debts maintained by the parties at the date of separation"). Because marital debts are classified, valued and distributed in the same fashion as marital assets, it logically follows that the rule enunciated in Grasty applies to marital debts as well as marital assets, so that the trial court only has the authority to assign marital debt among the parties when that debt can be valued and has the authority to value such debt "only when there is credible evidence supporting" an appropriate valuation. Grasty, 125 N.C. App. at 739, 482 S.E.2d at 754. "[The] same burden of proof applies [to both] . . . marital debts [and] marital assets[,]" Albritton, 109 N.C. App. at 40-41, 426 S.E.2d at 84. Therefore, the party seeking the assignment of a particular item of marital debt in an equitable distribution proceeding has the burden of proof on the valuation issue. In the absence of credible evidence as to the amount of a particular item of marital debt, it is not subject to equitable distribution. See Grasty, 125 N.C. App. at 740, 482 S.E.2d at 755.
The trial court made the following findings of fact relating to the debt associated with the Bekee Food Store:
8. The plaintiff alleges that he had extensive credit card indebtedness to Sam's Club (approximately $16,000.00), Discover Bank ($9,112.40), Sears ($709.09), Bank of New York Mastercard ($1,583.03) and an RBC Centura line of credit line [sic] in the amount of $2,748.89, at the date of separation accrued in connection with his operation of the food store and other marital businesses. The Court has noted hereinabove that plaintiff's management of his accounts renders a valuation of the food store impossible. Similarly, it is not possible for the Court to determine what specific purchases attributed to the alleged marital debt for the food store were in fact made specifically for the food store. The plaintiff testified on cross-examination that he used his Sam's Club membership to purchase personal items and items for Bekee Food Store until he was unable to keep up with his payments and, thereafter, his purchases were paid for by credit card and line of credit borrowing. The Court cannot speculate as to the ratio of personal business expense to legitimate business expense for Bekee Food Store or other businesses. Nor can the Court determine what amount of the debt claimed by plaintiff as marital actually benefitted the marriage as opposed to solely benefitting the plaintiff. What is clear to the Court, however, is that, after the 2003 separation of the parties, plaintiff retained sole and exclusive control over every asset of the parties, all spending for the businesses and supported himself wholly from the food store and other marital businesses.
. . . .
12.(E)(2) Plaintiff[']s claim that the marital debts for Sam's Club, Discover Card, Sears, Bank of New York MasterCard and RBC Centura Line of Credit should be considered as having benefitted the marriage as they were incurred in support of the Bekee Food Store are not persuasive. As noted hereinabove in the Court's findings with regard to these debts, plaintiff's management of the Food Store, its accounts and the other accounts under his exclusive control renders a valuation of [the] food store impossible and, similarly, a determination of the amount of the debt attributable to purchases solely of inventory for the store impossible. The Court cannot determine what amount of the debt claimed by plaintiff as marital actually benefitted the marriage as opposed to solely benefitting the plaintiff and, given the fact that, after the 2003 separation of the parties, plaintiff retained sole and exclusive control over the food store and supported himself wholly from the food store and other marital businesses, the Court finds that it may equitably assign all such claimed indebtedness to plaintiff. (emphasis added)
A careful review of the record provides ample support for a determination that there was no credible evidence tending to show the amount of debt incurred in connection with the operation of the Bekee Food Store as required by Grasty, 125 N.C. App. 736, 482 S.E.2d 752. Based upon that evidence, the trial court found that (1) "it is not possible for the Court to determine what specific purchases attributed to the alleged marital debt for the food store were in fact made specifically for the food store"; (2) "[t]he Court cannot speculate as to the ratio of personal business expense to legitimate business expense for Bekee Food Store or other businesses" or "determine what amount of the debt claimed by plaintiff as marital actually benefitted the marriage as opposed to solely benefitting the plaintiff"; (3) "plaintiff's management of the Food Store, its accounts and the other accounts under his exclusive control renders a valuation of [the] food store impossible and, similarly, a determination of the amount of the debt attributable to purchases solely of inventory for the store impossible"; and (4) "[t]he Court cannot determine what amount of the debt claimed by plaintiff as marital actually benefitted the marriage as opposed to solely benefitting the plaintiff[.]" As a result, we conclude that, given these unchallenged findings of fact, the trial court did not err by declining to determine the amount of the debt associated with that business. See Id. However, as was the case with the Bekee Food Store itself, we conclude that the trial court's inability to value the debt associated with the Bekee Food Store renders that debt not subject to equitable distribution, see Id., and that the trial court erred by assigning that debt to Plaintiff in its equitable distribution judgment. Accordingly, we reverse that portion of the trial court's equitable distribution judgment that assigns the debt associated with the Bekee Food Store to Plaintiff and remand this case to the trial court for the entry of a new equitable distribution order, without the taking of new evidence, see Miller, 97 N.C. App. at 80, 387 S.E.2d at 183, that distributes the parties' debts, other than those associated with the Bekee Food Store, in an equitable manner in accordance with the relevant statutory provisions, properly applied.

III: Unequal Distribution of Marital Assets
In his final argument on appeal, Plaintiff contends that the trial court erred by awarding all of the equity in the marital home to Defendant. However, a careful analysis of the argument advanced in Plaintiff's brief indicates that the real basis for this portion of his challenge to the trial court's equitable distribution judgment rests on a contention that "there is no finding that would support the trial court's award of an unequal division to the defendant," which was the basis upon which the trial court decided to award the equity in the marital home to Defendant. After carefully considering Plaintiff's argument in light of the applicable law, we disagree.
The relevant statutory provisions require that there "shall be an equal division . . . unless the court determines that an equal division is not equitable." N.C. Gen. Stat. § 50-20(c). N.C. Gen. Stat. § 50-20(c) further provides that, "[i]f the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably" and "shall consider" the following factors, among others, in attempting to accomplish that goal:
(1) The income, property, and liabilities of each party at the time the division of property is to become effective. . . .
(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker. . . .
(9) The liquid or nonliquid character of all marital property and divisible property.
(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party. . . .
(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution. .. .
(12) Any other factor which the court finds to be just and proper. . . .
In addition, N.C. Gen. Stat. § 50-20(a) effectively provides for the "freezing" of the marital estate as of the date of the parties' separation, since "[m]arital assets, distributed thereafter, are valued as of that date[.]" Sharp v. Sharp, 84 N.C. App. 128, 130, 351 S.E.2d 799, 801 (1987). "Attempts by one or both spouses to deplete the marital estate or dispose of marital property after the date of separation but before distribution may be considered by the court when making the division, and any conversion of marital property for individual purposes may be charged against the acting spouse's share." Sharp, 84 N.C. App. at 130, 351 S.E.2d at 801.
"[A] party desiring an unequal division of marital property bears the burden of producing evidence concerning one or more of the . . . factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable." White, 312 N.C. at 776, 324 S.E.2d at 832. "Therefore, if no evidence is admitted tending to show that an equal division would be inequitable, the trial court must divide the marital property equally." Id. "The legislature . . . clearly intended to vest trial courts with discretion in distributing marital property under N.C. [Gen. Stat. §] 50-20, but guided always by the public policy expressed therein favoring an equal division[.]" White, 312 N.C. at 777, 324 S.E.2d at 833. Since both parties sought an unequal distribution of their marital property, the trial court was required to address that issue in its equitable distribution judgment.
The trial court made the following findings of fact in support of its determination that an unequal distribution of marital property in favor of Defendant was appropriate:
12. The Court considered the following provisions of N. C. Gen. Stat. § 50-20(c) in light of the evidence before it at trial and makes the following findings with regard to each subsection thereof as follows:
(A) N.C. Gen. Stat. § 50-20(c)(l): "THE INCOME, PROPERTY AND LIABILITIES OF EACH PARTY AT THE TIME THE DIVISION OF PROPERTY IS TO BECOME EFFECTIVE"
(1) Since the date of the parties' separation, the plaintiff has had the benefit of all the income from the marital business and has paid all his personal expenses therefrom.. . .
(2) Similarly defendant's liabilities for personal expenses exceeded that of plaintiff. As noted hereinabove, [plaintiff]'s vehicle, vehicle maintenance, gasoline, food, housing, housing for his parents, travel expenses, child care expenses, gifts to others, loans to others, and virtually every other expense have been borne solely by the food store earnings and the earnings of the other enterprises which existed at the date of separation. Defendant, on the other hand, has had to pay from her own separate income for virtually all her own expenses, including food, clothing, shelter and utilities, purchasing her separate automobile after the Mercedes became inoperable, automobile liability insurance, all expenses in connection with Moshe while in her care, his food, clothing and other essentials.
(B) N.C. Gen. Stat. § 50-20(c)(6): "ANY EQUITABLE CLAIM TO, INTEREST IN, OR DIRECT OR INDIRECT CONTRIBUTION MADE TO ACQUISITION OF SUCH MARITAL PROPERTY BY THE PARTY NOT HAVING TITLE, INCLUDING JOINT EFFORTS OR EXPENDITURES AND CONTRIBUTIONS AND SERVICES, OR LACK THEREOF, A SPOUSE, PARENT, WAGE EARNER OR HOMEMAKER"
(1) The 2003 GMC Sierra was purchased using marital funds during the marriage. Since the date of separation, plaintiff has had the exclusive use and possession of the Sierra and all payments made to reduce the indebtedness thereupon have come from earnings from marital property, primarily from Bekee Food Store. The Court finds that the GMC Sierra provided absolutely no benefit to the marriage itself.
(C) N.C. Gen. Stat. § 50-20(c)(9) and (10): "THE LIQUID AND NON-LIQUID CHARACTER OF ALL MARITAL PROPERTY AN[D] DIVISIBLE PROPERTY;" and N.C. GEN. STAT. § 50-20(c)(10): "THE DIFFICULTY OF EVALUATING ANY COMPONENT ASSET OR ANY OTHER INTEREST IN A BUSINESS, CORPORATION OR PROFESSION, AND THE ECONOMIC DESIRABILITY OF RETAINING SUCH ASSET AND INTEREST, INTACT AND FREE FROM ANY CLAIM OR INTERFERENCE BY THE OTHER PARTY"
(1) The Bekee Food Store real property is a non-liquid asset which the Court could order sold for the purpose of effecting a division. However, to do so would destroy the future profitability of the business itself. The date of separation and present value of the Bekee Food Store business cannot, as the Court has found hereinabove, be reasonably determined, but certainly it will have no future value apart from whatever inventory presently exists if the store is sold and, given the judgment of this Court, the sale of the real property is not required to equitably divide the marital estate. Given the relative equities of the parties as found herein, the other distributional factors found, a distribution of the Bekee Food Store real property business and real property to the defendant is equitable.
(2) The various bank accounts controlled exclusively by the plaintiff are all liquid in character and have, as noted herein, been used by him interchangeably for a variety of personal and business purposes. These accounts can be distributed consistent with an equitable distribution of the marital estate. To the extent that all have been under the exclusive control of the plaintiff since before the date of separation and were used by him for mixed personal and business purposes which have rendered it impossible for the Court to ascertain within an acceptable margin of reliability, the Court finds that equity requires that the defendant not be required to suffer from plaintiff refusing to or, at the least, negligence in failing to, account for these assets from and after the separation. Thus, a distribution of these accounts to plaintiff is found to be equitable.
(3) Blessed Auto Sales similarly has no discernible value other than in the form of the bank account balance just after the date of separation and the Court has, therefore, set its value at $12,258.88. What is more clear, as noted hereinabove, however, is the fact that the plaintiff operates this business, at least in part, for purposes other than for the sale of used cars. The defendant has had no involvement in this business and, while the Court finds that to be consistent with plaintiff's other financial dealings and his attitude towards the defendant after 2003, the Court believes it would not be equitable to distribute this asset to the defendant given the fact that its nature appears to be wholly personal to the business practices of the plaintiff.
(4) Moshe Holdings, Inc. is a closely-held corporation. There is no evidence that any stock was actually issued. By its nature a corporation is a nonliquid asset; although stock in the company, depending on its character, may be divided. There being no stock and the Court having been presented with no evidence of the existence of any stock redemption plan, buy-sell agreement or other means adopted by the company for division of its assets and liabilities, the Court is, therefore, limited by its duty to divide the marital estate equitably to consideration of awarding the ownership of the company as a whole. In so doing, the Court is mindful of the fact that the evidence shows that the company was created by the plaintiff for the sole purpose of aiding the plaintiff in exercising exclusive control over marital assets and that, in fact, defendant has never had any knowledge or control of the company, its business enterprises, expenses, profits, losses, expenses or any other aspects of its operations. Again, as in the case of Blessed Auto, the Court believes it would not be equitable to distribute this asset to the defendant given the fact that its nature appears to be wholly personal to the business practices of the plaintiff.
(D) N.C. Gen. Stat. § 50-20(c)(11a): "ACTS OF EITHER PARTY TO MAINTAIN, PRESERVE, DEVELOP OR EXPAND; OR TO WASTE, NEGLECT, DEVALUE OR CONVERT THE MARITAL PROPERTY OR DIVISIBLE PROPERTY, OR BOTH, DURING THE PERIOD AFTER SEPARATION OF THE PARTIES AND BEFORE THE TIME OF DISTRIBUTION"
(1) The Court has found that plaintiff began shifting monies to a variety of accounts and businesses after the parties separated in 2003 and continued to engage in this practice after they resumed their marital relationship right up to and after the date of separation. This practice has led to the dearth of clear evidence of the actual value of the marital estate confronting the Court at the time of trial. The Court has found and does find, therefore, relevant to this factor, the following:
(a) The plaintiff has had the benefit of all income and profit from the marital businesses since the date of separation and the defendant has had none;
(b) The plaintiff has had total control over all marital debt of the parties since the date of separation and, to the extent that marital debt still exists as of the time that the Court must distribute the same, that debt still exists as the sole and proximate result of the fact that the plaintiff has chosen to support himself and others wholly from the income from marital businesses;
(c) The plaintiff's reduction of the debt on the GMC Sierra has been for his sole benefit and [defendant] has not benefitted therefrom;
(d) The plaintiff has converted Bekee Food Store, its underlying property, Blessed Auto, Moshe Holdings, Inc. and each bank account at issue to his sole use and benefit;
(e) The 1989 206E Mercedes automobile which was in defendant's sole possession after the date of separation was a high mileage automobile which became inoperable through the normal course of usage primarily during the marriage;
(f) Plaintiff's failure to pay reasonable child support to defendant after the date of separation and his withholding of income[] from the marital businesses were the sole and proximate cause of the defendant's inability to make mortgage payments on the marital home and resulted in the waste of the equity of the parties in this asset by allowing the same to be foreclosed upon by the lender. The Court has considered the fact that the home was in defendant's exclusive possession as the result of plaintiff's removal by virtue of the domestic violence order of this Court, but this fact did not relieve plaintiff of his obligation to provide support for the parties' minor child while he was in defendant's care. The Court finds that plaintiff knowingly allowed the marital home property to be foreclosed upon as a means to deprive defendant of a residence to exercise custody over Moshe and assigns the primary responsibility for the loss of the marital home to foreclosure to plaintiff. [Footnote 3] As is further found hereinbelow with relation to the Court's consideration of the facts under N.C. Gen. Stat. § 50-20(c)(11a), plaintiff maintained sole control over communications with the primary lender regarding the status of the foreclosure as the deed of trust was in his sole name and defendant was unable to know the amount of the mortgage arrearage or make arrangements for alternatives to foreclosure until she was given final notice of the foreclosure at a time she could not have rescued the property from it. [End Footnote]
(E) N.C. Gen. Stat. § 50-20(c)(12): "ANY OTHER FACTOR WHICH THE COURT FINDS TO BE JUST AND PROPER"
(1) The Court finds that the "loans" claimed by plaintiff to constitute valid liens against the marital home of the parties to constitute fraudulent claims on the part of the plaintiff for the reasons set forth hereinabove;[2]
(2) Plaintiff's claim that the marital debts for Sam's Club, Discover Card, Sears, Bank of New York Mastercard and RBC Centura Line of Credit should be considered as having benefitted the marriage as they were incurred in support of the Bekee Food Store are not persuasive. As noted hereinabove . . ., plaintiff's management of the Food Store, its accounts and the other accounts under his exclusive control renders a valuation of [the] food store impossible and, similarly, a determination of the amount of the debt attributable to purchases solely of inventory for the store impossible. The Court cannot determine what amount of the debt claimed by plaintiff as marital actually benefitted the marriage as opposed to solely benefitting the plaintiff and, given the fact that, after the 2003 separation of the parties, plaintiff retained sole and exclusive control over the food store and supported himself wholly from the food store and other marital businesses, the Court finds that it may equitably assign all such claimed indebtedness to plaintiff.
(3) Plaintiff has made several trips to destinations abroad since the date of separation, including to Nigeria. It is apparent to the Court that he is actively engaged in a "brokerage" and/or import/export business, although he denies substantial earnings from this business. He alleges that the food store is not profitable. Where then do the funds which appear flowing into and out of his many accounts come from? The Court believes and, thus, finds that plaintiff is able to earn substantial income from his these other businesses. Finally, although plaintiff asserts that defendant's educational background confers upon her a greater income-earning potential than does his more limited educational background, the Court does not find the facts to bear out this assertion. In fact, defendant's current income of $15.00 per hour appears to be the maximum she can earn while she awaits the successful completion of the MCSW licensing process nearly a year from now.
The trial court's extensive findings of fact relating to its distribution decision have not been challenged as lacking adequate evidentiary support and are, therefore, binding upon us for purposes of appellate review. Furthermore, as its findings clearly indicate, the trial court based its distribution decision upon the factors enumerated in N.C. Gen. Stat. § 50-20(c). For that reason, the only remaining issue is whether the trial court's findings support its conclusion that an unequal distribution, which resulted in Defendant's being awarded the equity in the marital home, is equitable.
As we have previously noted, a trial court's determination that marital property should be divided unequally will not be set aside on appeal unless its ruling was arbitrary and did not result from a reasoned decision. White, 312 N.C. at 777, 324 S.E.2d at 833. Plaintiff challenges the trial court's distribution decision on a number of different grounds, including contentions that its decision "punish[ed] the plaintiff for drawing income from the business interest[s] he solely ran [after] the date of separation" while simultaneously finding that "he had the ability to earn more income than the defendant through this business;" used "the non-liquid character of the business to support an unequal division" while giving "the parties[] a one-half undivided interest in the same;" utilized "other business interests, for which it could find `no discernible value[,]' to substantiate an unequal division in the defendant's favor;" treated "the junior liens on the former marital home" as "fraudulent" despite the fact that "they were signed by the defendant" and that "there was no specific finding that would otherwise make the claims fraudulent;" and "assign[ed] the credit card debts to the plaintiff" while using "them as a reason to give the defendant an unequal distribution in her favor." Having reviewed the record, we find no indication that the trial court's decision that the parties' marital property should be divided in an unequal manner was anything other than a well-reasoned one and that the trial court did not abuse its discretion by determining that the parties' marital property should be divided in an unequal fashion. The trial court's findings detail a series of reasons for an unequal distribution of the marital assets in Defendant's favor, including Plaintiff's personal use of all income from various marital assets after 2003, Plaintiff's decision to commingle personal and marital assets in such a way as to prevent the equitable distribution of marital property, Plaintiff's apparent attempts to hide income and other assets from Defendant, and Plaintiff's failure to take appropriate steps to prevent the loss of the marital home.[3] The arguments advanced in Plaintiff's brief in opposition to the trial court's conclusion represent little more than an expression of disagreement with that conclusion and certainly do not demonstrate that it lacked a reasoned basis. For example, the trial court's findings with respect to the "junior liens" on the marital home provide ample support for a conclusion that Plaintiff was a party to inappropriate conduct and that this fact supported an unequal distribution in favor of Defendant. Furthermore, the trial court's determination that the bulk of the credit card debt did not benefit the marriage provides ample support for an unequal distribution in which responsibility for the credit card debt is assigned to Plaintiff. Finally, the trial court's determination that Plaintiff had the benefit of all of the income from various businesses provides ample support for an unequal distribution that favors Defendant. Although the trial court erred, for the reasons we have described in more detail above, by distributing the Bekee Food Store and related debt in its equitable distribution judgment, the relief granted based upon other portions of our decision will rectify any harm that has resulted to Plaintiff from this aspect of the trial court's judgment, obviating any need for us to disturb the trial court's overall distribution decision. As a result, we conclude that Plaintiff's challenge to the trial court's distribution decision is without merit, so we overrule this assignment of error.

IV. Conclusion
For the reasons stated above, we conclude that the trial court did not err by finding that, given the parties' failure to adduce sufficient competent evidence pertaining to the value of the Bekee Food Store or the amount of debt associated with that business, it could not value that asset and related debts. In addition, we further conclude that the trial court erred by distributing that business and the related debts in its equitable distribution order. Finally, we conclude that the trial court did not err in determining that an unequal distribution of marital property was equitable and in awarding the equity in the marital home to Defendant. In light of these holdings, we remand this case to the trial court for the entry of a new equitable distribution order that is not inconsistent with this opinion.
AFFIRMED in part; REVERSED and REMANDED in part.
Judges MCGEE and JACKSON concur.
Report per Rule 30(e)
NOTES
[1] Any interest the parties have in marital property for which there is insufficient evidence to support a valuation will necessarily pass outside the Equitable Distribution Act. However, the distribution of such items of property may "be determined by alternative means of property division, including other relevant statutes, the common law or private agreements." Grasty, 125 N.C. App. at 740, 482 S.E.2d at 755.
[2] In Finding of Fact No. 6.(5), the trial court found as a fact that: "At issue at trial were two purported additional mortgage debts alleged by plaintiff secured by the marital home totaling $50,000.00 in favor [of] two third parties, Chris Eze and Leonard Akunwafor. Apparently, neither Mr. Eze [n]or Mr. Akunwafor chose to buy out RBC Centura's first mortgage, pursue[] foreclosure or otherwise assert[] their interest at the foreclosure. Further, plaintiff's contention that the Eze and Akunwafor debts were valid as against the marital home lacks credibility for other reasons. First, defendant testified with persuasive force that she was given no choice by plaintiff and his former attorney . . . at the closing as to whether she would execute the deed of trust to Eze and Akunwafor, having been told by plaintiff prior to the closing that he and she had the funds to close the loan and then having been told at closing that, if she did not execute the deed of trust to Eze and Akunwafor, the parties would lose the property. Second, and even more compelling, is the fact that the source of the `borrowed' funds plaintiff testified originated from Eze and Akunwafor was shown during defendant's [c]ross-examination of plaintiff to have been [an] RBC Centura Bank Account . . . in the names of Stevie Ikechukwu, Chris Eze, and Leonard Akunwafor as joint account owners. The Court, therefore, finds that the source of funds for the purported second mortgages was, in fact, marital funds of the parties owned and controlled in whole or in part by plaintiff and holds the Eze-Akunwafor mortgage fraudulent, invalid, unenforceable and not a valid lien against the marital home."
[3] Among the steps that the trial court contended that Plaintiff should have taken in order to preclude the loss of the marital home was the payment of reasonable child support. Although the record does not reflect that Plaintiff was under an obligation to make child support payments to Defendant, Plaintiff has not challenged the validity of the trial court's distribution decision based on the findings relating to Plaintiff's nonpayment of child support.